barways are part of the fence that the railroad company is bound to maintain and keep in repair, and it could only be held liable if the defendant had actual notice that the bars were down, or that they had been down for such a length of time that the defendant might be presumed to have had notice through its agents or servants. In this case the only proof of notice to the defendant is that one of its servants found the barway open and closed it on Saturday, as the accident in question happened on Monday. It is true that the witness is an interested witness, and that the jury had the right to disbelieve his testimony. At the same time it is the only evidence that the defendant had notice that such bars were open, and was coupled with the statement that they were thereupon closed.

---

WINDOVER et al. v. TROY CITY RY. CO.

(Supreme Court, Appellate Division. Third Department. April 14, 1896.)

1. MASTER AND SERVANT—ASSUMPTION OF RISKS.

A motorman who was injured in consequence of a defective brake, whereby he was prevented from stopping the car on an incline, assumed the risks by continuing to work on the car with knowledge of the defect.

2. SAME—KNOWLEDGE OF DEFECTS.

Knowledge of the motorman that a man was not employed by the company to place sand upon the track to prevent the car from slipping on the incline, does not necessarily show an assumption of the risk resulting from the neglect to employ such an employé, as the motorman may not have had knowledge of the need of such an employé.

Appeal from circuit court, Rensselaer county.

Action by Lewis E. Windover and another, administrators, against the Troy City Railway Company. From a judgment for defendant, plaintiffs appeal. Reversed.

This action was commenced by the plaintiffs, as administrators of Lyman Windover, deceased, to recover damages for the alleged negligence of the defendant, by which it was claimed the death of the said deceased was caused. On the 28th day of December, 1893, in the city of Troy, N. Y., the said Windover was employed by the defendant, as he had been for several years before, as a motorman on one of its street cars propelled by electricity. At the time he was injured he was in charge of car No. 27, then proceeding in a westerly direction down an incline on Hoosick street, in said city. The tracks were slippery. The grade of Hoosick street is steep, having in some places a descent of from 8 to 9 feet to the 100; and the car became unmanageable, and ran away down the incline, and across River street, into a building on the west side thereof. The decedent was so injured by the collision that he died on the next day. The alleged negligence of which the plaintiffs complained was that the brake on the car was defective, and also the defendant's failure to employ a "sandman" to put sand on the slippery tracks. It was shown that car No. 27, on one occasion before, when under the charge of another motorman, had run away. The plaintiffs offered to show that on another occasion, prior to the injury to Windover, another of its cars ran away down the incline of Hoosick street; also that the defendant, after that, for two or three days, had employed a man to put sand on the track, but had subsequently taken him off; also to show that at the time the car ran away prior to the injury to decedent the power on the car was reversed, but its speed was not diminished, because of the slippery condition of the tracks, there being no sand thereon. The evidence so offered was, on the objection of

the defendant, excluded by the court. The following proceedings were also had on the trial, during the examination of the witness Lewis E. Windover: "Q. by the plaintiffs: Was there any sandman provided for the cars running up and down that hill? (Objected to as incompetent and immaterial.) The Court: I don't see how it can be made material. If a stranger could know that there was no sandman, the deceased must have known it; and if he knew it he must have assumed the risk himself, I think. An employé assumes all the apparent risks. I will exclude the matter of the sandman. Mr. Black: I except. I offer to show that the road failed to provide any man or help with which to put sand upon this track of this railroad upon Hoosick street, to assist in the stopping or management of the cars, and that because of that failure the accident occurred which produced Windover's death. The Court: I suppose you mean no sandman was employed at any time prior to the death of the deceased? Mr. Black: Yes; nor at that time. (The offer is objected to as before.) The Court: Excluded on the ground that it was a danger to be assumed, and it was a condition and fact known to the deceased. Plaintiffs excepted." At the close of the plaintiffs' evidence they were nonsuited by the trial court, and from the judgment of nonsuit this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Frank S. Black, for appellants.
Thomas S. Fagan, for respondent.

PUTNAM, J. The evidence produced by the plaintiffs to show that the brake on car No. 27 on which the decedent was the motorman at the time of the accident was defective was scarcely sufficient to sustain their contention. They were only able to show that about a month before the injury to Windover the brake worked hard. Were it otherwise, however, it appeared that the deceased had been in the employ of the defendant as a motorman for several years. If the brake worked hard, or was defective, he must have known it. He, therefore, having, with such knowledge of the defect, taken the responsibility of working on the car, and assumed the risk arising therefrom, no liability on account of the brake was incurred by the defendant. Powers v. Railroad Co., 98 N. Y. 274; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Monaghan v. Railroad Co., 45 Hun, 113; Odell v. Railroad Co., 120 N. Y. 323, 24 N. E. 478; Freeman v. Mill Co., 70 Hun, 530, 24 N. Y. Supp. 403, affirmed 142 N. Y. 639, 37 N. E. 567. Hence the only question in the case that requires consideration is that arising from the exclusion of the evidence offered by the plaintiffs. The trial court refused to allow the plaintiffs to show that the corporation failed to supply a sandman for cars running on Hoosick street, stating that he would exclude the matter of the sandman on the ground that, if one was not provided by the defendant, Windover must have known it, and therefore he assumed the risk resulting from the absence of such an employé. As the trial court excluded all testimony on that subject, of course we cannot know what evidence the plaintiffs would have produced if permitted. It was the duty of the defendant to supply the car on which the deceased was employed as a motorman with sufficient and proper help, and with proper appliances and instrumentalities, to safely operate it. Flike v. Railroad Co., 53 N. Y. 549; Booth v. Railroad Co., 73

N. Y. 38; Whittaker v. President, etc., 126 N. Y. 544, 27 N. E. 1042; Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915. The decedent, as the employé of the defendant, in the management of the car, had the right to rely upon the assumption that the defendant had performed this duty. He did not, in the first instance, assume risks resulting from the failure of the corporation to do so. As Andrews, J., remarked in Booth v. Railroad Co., 73 N. Y. 40:

"The rule that the servant takes risks of the service 'supposes,' says Lord Cranworth, 'that the master has secured proper servants and proper machinery for the conduct of the work. Coal Co. v. Reid, 3 Macq. 275.'"

If, however, in the service of the defendant, Windover discovered that it had failed to furnish proper machinery and appliances for the car, or sufficient help, and after such discovery voluntarily continued in the employ of the corporation, under the authorities above referred to he must be deemed to have elected to have assumed the risks resulting from the neglect of the defendant to perform its duty. Thus it has been held that a servant of a railroad company cannot recover for injuries resulting from the unskillfulness of his fellow servant negligently employed by the corporation, if he voluntarily remained in its service with knowledge of such fact. Haskin v. Railroad Co., 65 Barb. 129, affirmed 56 N. Y. 608; Laning v. Railroad Co., 49 N. Y. 521. So, in this case, the decedent, having elected to remain in the service of the defendant with knowledge of the defective brake, cannot recover from the corporation for an injury resulting therefrom. The risk from the brake was apparent, and must have been known to and voluntarily assumed by him.

But we are unable to concur with the view taken by the trial court that the decedent assumed the risk resulting from the defendant's neglect to employ a man to place sand on its tracks, in the absence of any evidence of facts indicating such an assumption. We think the judge should have received the evidence offered by the plaintiffs, and afterwards determined the question he assumed to decide in advance, if the facts proved by the plaintiffs should have shown that a sandman was required for cars of the defendant on Hoosick street, and that it was negligent in not furnishing such an employé. As we have already said, it was the duty of the corporation to supply the car with suitable machinery, appliances, and help with which to manage it; and the deceased, as an employé, in the first instance, could properly assume that it had performed this duty. He was not required to make a critical examination of those appliances, or to entertain doubts as to the car's being properly equipped. He knew that the speed of the car could be regulated in two ways,—by the brake and by reversing the power. He could properly assume, unless he knew otherwise, that those means provided by the defendant were sufficient. There was no evidence produced that he knew that a sandman was required. It was not proved that the car had ever run away with him, or that he knew that it or any other of defendant's cars had run away before the accident. We think the learned trial court was mistaken in assuming as a fact, in advance of the evidence offered, or which might have been produced,

that Windover assumed the risk arising from the failure of the defendant to employ a sandman. Had the court received such evidence, a state of facts might have appeared showing such an assumption; or, on the contrary, the circumstances might have indicated that the deceased, without any knowledge of the necessity of a sandman, and believing that the defendant, as it was its duty to, had furnished the required instrumentalities to check the speed of the car, had not assumed a risk of which he was ignorant, or the evidence, if received, might have raised a question of fact for the jury as to such assumption, Laning v. Railroad Co., supra. In 14 Am. & Eng. Enc. Law, 843, it is said:

"A servant does not, of course, assume the risk of any dangers from unsafe or defective methods, surroundings, machinery, or other instrumentalities, unless he has, or may be presumed to have, knowledge or notice thereof."

In a note on the next page of the same volume it is also stated:

"And it may be observed in this connection that it is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his services, and another thing to know or appreciate the risks resulting or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory negligence or the assumption of the risks growing out of them. The question is, did he know, or ought he to have known, in the exercise of ordinary common sense and prudence, that the risks, and not merely the defects, existed. Cook v. Railway Co., 34 Minn. 45, 24 N. W. 311; Russell v. Railway Co., 32 Minn. 230, 20 N. W. 147."

We think the above quotations, which are supported by many authorities in the work in question, state the correct principle applicable to such a case as this. Windover did not assume the risk in question unless he knew that the power to reverse and the brake were insufficient to prevent the car from running away, and that a sandman was required. It could not be properly assumed as a fact, in the absence of any evidence in that regard, that he did know. In the absence of such knowledge, the risk arising from the absence of the sandman was not an apparent one. In Haskin v. Railroad Co., supra, it appeared that the deceased knew of the unskillfulness of his co-employer, and after such knowledge voluntarily remained in the service of the corporation. We think, therefore, the court below erred in disposing of the case in advance of the evidence that might be produced, and in declining to receive the testimony offered by the plaintiffs.

The question arising in the case as to the contributory negligence of the deceased was, we think, under the facts shown, clearly for the jury.

The judgment should be reversed, and a new trial granted; costs to abide the event.

PARKER, P. J., and HERRICK and MERWIN, JJ., concur.

LANDON, J. The absence of a sandman was immaterial, because it was not shown that his presence was necessary. It was shown that the car was equipped with a distributing sand box, from which

the motorman could apply sand to the tracks, and plaintiffs' counsel did not offer to show that a sandman was also necessary. It would not be proper to allow the jury to infer the necessity of his presence in the absence of evidence tending to show it. Experience must have demonstrated whether both box and man are necessary in such cases, and evidence of its teaching must be obtainable. The jury should not be permitted to make a rule of law to suit themselves, or find a fact without evidence. Cumming v. Railroad Co., 104 N. Y. 669, 10 N. E. 855. I doubt, therefore, whether we should reverse.