CROSS LAKE LOGGING CO. v. JOYCE.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1897.)

No. 944.

**1. EVIDENCE—RES GESTÆ—PERSONAL INJURIES.**
Where, prior to an accident, an injured person complained to the master of the incompetency of a fellow servant, and was assured that such servant would be discharged, and until he was he would be watched to see that he hurt nobody, statements of the injured person, made to the master immediately after the accident, that the injury would not have been received had the incompetent servant been discharged, are admissible as part of the res gestæ.

**2. SAME—ADMISSIONS—STATEMENTS NOT DENIED.**
Declarations of fault on the part of the master, made by an injured servant, immediately after an accident, to one in charge of the work and competent to deny them, are admissions of the truth of such declarations, when no denial was made.

**3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**
Whether or not one, who complained of the incompetency of a fellow servant prior to an accident in which he was injured, was guilty of contributory negligence by returning to work with such servant upon assurances that the servant would be replaced by a competent person, and, until he was, would be watched to see that he hurt no one, is a question for the jury.

**4. SAME—INSTRUCTIONS—EVIDENCE.**
It is not error to refuse to instruct the jury that there is no evidence from which they could infer that the servant remained in the master's employ in reliance upon any promise other than that the servant would be watched, and warning given of any danger, when there is evidence of a promise, upon which the servant might have relied, to the effect that a competent man would be substituted.

In Error to the Circuit Court of the United States for the District of Minnesota.

Emanuel Cohen (Stanley R. Kitchel and Frank W. Shaw, on the brief), for plaintiff in error.

T. F. Frawley (F. C. Brooks and F. N. Hendrix, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

THAYER, Circuit Judge. This is a suit for personal injuries, in which John Joyce, the defendant in error, sued the Cross Lake Log-

ging Company, the plaintiff in error, hereafter termed the "Logging Company," in the circuit court of the United States for the district of Minnesota, for injuries sustained while he was in its employ as a common laborer, and was assisting some other employés of the Logging Company in loading saw logs upon cars at a place called Woman's Lake, in the state of Minnesota. On the bank of said lake the Logging Company had constructed certain hoisting works, by means of which logs were first drawn from the lake by an endless chain, to a deck or platform elevated some distance above the lake, and were thence rolled down an incline or steps, onto cars standing at the foot of the incline. The plaintiff was working on this incline, his duty being to direct the movement of logs on one of the steps as they were rolled down the incline from the platform, when, by the carelessness of a fellow workman named Peter Plein, a log was allowed to roll down the incline in such a manner as to break and crush the plaintiff's right leg, and necessitate amputation. As a ground for recovery, the plaintiff alleged, in substance, that the work in which he was engaged when he was hurt was dangerous work, requiring skill and activity on the part of those who were engaged in its performance, and that the man named Peter Plein, by whose negligence the injuries complained of were sustained, was a careless and incompetent fellow servant and unfitted for the employment in which he was engaged, and that the Logging Company was well aware of his incompetency, and by reason thereof had promised to substitute some other person in his place a short time before the accident occurred. There was considerable evidence tending to establish all of these allegations, and the jury found in accordance with such testimony. It is assigned for error, however, that the trial court erroneously permitted the plaintiff to give in evidence his own declarations as to the cause of the accident which were made after he was hurt, to one Frank C. Bolin, who was the superintendent of the Logging Company, and who was present at the time of the accident. In the course of the trial there was testimony offered to the effect that on the day of the accident, and prior thereto, the plaintiff informed Frank C. Bolin, the defendant's superintendent in charge of the hoisting works, that Plein was careless and reckless, and did not know anything about the work in which he was engaged, and that he, the plaintiff, would quit work if Plein was further employed in the position where he was then assigned. There was further testimony to the effect that Bolin, in response to this complaint, told the plaintiff to go back to work; that he would put a good man in Plein's place; and that until he did so he would "see to him" himself, and see that he did not hurt anybody. Shortly thereafter the accident occurred, and Bolin was the first man to come to the plaintiff's assistance when his leg was crushed by the log. The plaintiff was allowed to testify, notwithstanding an objection on the part of the defendant company, that when Bolin came to his assistance, as aforesaid, and within a moment after the accident occurred, he exclaimed: "Frank, I wouldn't have lost my leg if you had done as you agreed to and put another man in his place;" and that Bolin said nothing in reply to this remark.

It is manifest, we think, that the statement made by the plaintiff to Bolin, to which the objection related, was properly admitted in evidence as a part of the res gestæ, because it was so nearly coincident with the occurrence to which it referred that the statement may be regarded as having been made almost involuntarily, without time for reflection, when the plaintiff's mind was vividly impressed with the true cause of his injury. Statements thus made, which are not a narrative of a past transaction, but spring naturally and without premeditation from the lips of an injured person in the very presence of the circumstances which have produced it, and while the victim is perhaps writhing in pain, are of the highest value as evidence. Railroad Co. v. Lyons, 129 Pa. St. 114, 18 Atl. 759; Railway Co. v. Buck, 116 Ind. 575, 19 N. E. 453; State v. Murphy, 16 R. I. 529, 17 Atl. 998; Com. v. Hackett, 2 Allen, 136, 139; Greenl. Ev. § 108. Moreover, the fact that Bolin, though charged by the plaintiff with being at fault, did not deny the accusation, may be regarded as in the nature of an admission on the part of Bolin that the charge was true.

It is further claimed by the defendant company that if Plein was unskilled in the performance of the duties to which he had been assigned, and that fact was known to the plaintiff, then the fact that he continued to work amounted to contributory negligence on his part, because the incompetency of Plein rendered the work to be done so imminently and immediately dangerous that no prudent person would have continued to work at the labor in which the plaintiff was engaged until some other person had been put in Plein's place. It is doubtless true that when a master promises to remedy a defect in a machine, or to replace an incompetent fellow servant, such promise will not justify the promisee in continuing to work, if, in view of the defect or the incompetency of the fellow servant, the work to be done is rendered imminently and immediately dangerous. Haas v. Balch, 12 U. S. App. 534, 540, 6 C. C. A. 201, and 56 Fed. 984; Gowen v. Harley, 12 U. S. App. 574, 586, 6 C. C. A. 190, and 56 Fed. 973; Mining Co. v. Fullerton, 36 U. S. App. 32, 41, 16 C. C. A. 545, and 69 Fed. 923; Hough v. Railway Co., 100 U. S. 213. But it is usually a question for the jury to determine whether the work was rendered imminently dangerous by reason of the defect, and whether the employé was guilty of contributory negligence, because he continued to work in reliance on the promise of his master to remedy a given defect or discharge an incompetent fellow servant. It was treated as a question of fact in the present case, and the jury were instructed in accordance with the law as above stated. The jury found in favor of the plaintiff upon that issue, and we cannot say that the work was so extremely dangerous, in view of Plein's incompetency, that the trial court ought to have charged, as a matter of law, that he was guilty of culpable negligence in remaining at work, notwithstanding Bolin's promise to put a competent man in Plein's place.

It is finally claimed that the trial court should have instructed the jury that there was no evidence in the case from which they could infer that the plaintiff remained in the defendant's employ in reliance upon any promise other than a promise made by Bolin that

83 FEDERAL REPORTER.

he would watch Plein, and warn the plaintiff of any danger that he might be subjected to by Plein's negligence or incompetency. This instruction was asked, it seems, for the purpose of enabling the defendant company to contend before the jury that Bolin discharged the duty of watching Plein to the best of his ability, and for that reason the defendant was not liable. We are not able, however, to adopt that view of the case. The plaintiff complained primarily of the employment by the defendant of a negligent and incompetent fellow servant, and he alleged, as an excuse for remaining at. work with knowledge of that fact, that he was induced to remain by Bolin's promise that he would put a competent man in Plein's place, and that in the meantime he would watch him, and see that no one was hurt by his neglect. There was sufficient evidence to support these allegations, and from which the jury were at liberty to infer that the plaintiff was influenced to continue at work as much by the promise that the incompetent fellow servant would be shortly removed as by the promise that his actions would in the meantime be watched. There was no occasion, therefore, for giving the instruction in question, and the trial court properly refused it. Upon the whole, the record discloses no error which would warrant a reversal of the judgment below, and it is accordingly affirmed.