THE EAST TENNESSEE, VIRGINIA & GEORGIA RAIL-
ROAD COMPANY *v.* DANIEL D. CONNER and WIFE.

RAILROADS. *Passengers entitled to safe place to alight from train.* A sta-
tion being called by the conductor of a railroad train, and the pas-
senger told to get off, there being no light or assistance offered, had
a right to rely upon the directions of the conductor, and to presume
that he was at the usual place of getting off, and that there was at
that place a safe and suitable place to alight from the train.

FROM WASHINGTON.

Appeal in error from the Circuit Court of Wash-
ington county.  NEWTON HACKER, J.

W. M. BAXTER and JOHN ALLISON for Railroad
Company.

I. E. REEVES, S. J. KIRKPATRICK and H. H. CARR
for Conner and Wife.

COOKE, J., delivered the opinion of the court.

This action was for wrongfully and oppressively
causing the plaintiff, Mrs. Conner, who was a passen-
ger upon the defendant's cars, to leave the train in
the night time and when it was very dark, at an im-
proper and dangerous place, at a considerable distance
from the depot and regular place of discharging pas-
sengers at the station where she was to get off, and
in thus leaving the train, while in the exercise of due
care on her part, she fell and was greatly injured,
etc.  There was a verdict and judgment for the plain-
tiff, and the defendant has appealed.

Railroad Company *v.* Conner and Wife.

There was proof tending to show that the plaintiff was a passenger upon defendant's train from Jonesboro to Johnson City; that about four o'clock, A. M., when the train was approaching the latter station, the signal for the station was sounded, the station called by the conductor, who, just as the train was stopping, and before it had stopped, told the plaintiff, who was alone, to get off, if she was going to get off; whereupon she got up, being but two seats from the door of the car, the conductor opened the door and just as she got to the door, the train started; as she stepped out upon the platform of the car, the conductor stepped inside and shut the door; it was so dark that she could not see any thing, and she descended as quick as she could to the lower step and jumped off; that she was excited when she saw the train was moving, and jumped off as quick as she could to save herself, as she states; that at the time she jumped the train was moving as fast as a man could walk "brisk;" the train was stopped but a moment, she arose immediately when the conductor told her to get off if she was going to, and did get off as fast as she could; that there was not time for her to have possibly got off, after she was so told by the conductor, before the train started; that she could not see the ground where she jumped off; and that it was in a rough, uneven and dangerous place, between two tracks; and that she fell upon the ends of the cross-ties and was seriously injured. The place was about four hundred yards from the platform at the station where passengers are usually landed, and

the train was flagged down at that place because of the rear cars of a passing freight train being upon the main track. There was no light where she jumped off, nor did those in charge of the train render her any assistance, or give her any warning after she was told to get off, when the train was started before she had 'time to do so.

We are satisfied there is sufficient evidence to sustain the verdict, under the rule of this court, and the only question for consideration is as to whether there is any reversible error in the charge of the court.

Various errors have been assigned and insisted upon by counsel for the plaintiff in error. The following, however, we think, the one that requires serious consideration. His Honor, among other things, charged the jury as follows: "Railroad companies, through their agents and employes, are required to notify passengers of their arrival at stations, and when such notice is given, passengers have a right to act upon such notice and alight, if the train stops. But a passenger would not be authorized to alight from a train while in motion, even at a station, if the motion of the train should be such as to render such passenger liable to suffer serious injury in attempting to alight. If a passenger, on nearing a station, to which he or she is bound, is notified by the railroad employes of his or her arrival at such station, and if, in attempting to alight, such passenger shall find such train still in motion, and at such rate of speed as to make it apparent that he or she would run great risk of being injured in alighting, or attempting to alight,

Railroad Company *v.* Conner and Wife.

then such passenger would not be authorized to alight, and if such passenger should, under such circumstances, step off or jump off and be injured in so doing, such passenger could not recover for an injury so received, notwithstanding the station may have been announced by the railroad employes."

This charge, it is insisted, is erroneous, inasmuch as it leaves the jury to understand that a passenger who steps or jumps from a moving train and is injured, is entitled to recover unless it should appear that the motion of the train was such as to render such passenger liable to suffer *serious* injury thereby, or would run great *risk* in doing so, and that a passenger may step or jump off a moving train under such circumstances as would prevent his recovery for injuries received thereby, although it might not appear that the motion of the train was such as to render him liable to suffer *serious* injury thereby, or that he was running great risk in doing so. This, as an abstract proposition, may be true. But his Honor had, as we think, properly charged the jury in regard to the duty of the defendant to provide safe and suitable places for passengers to get on and off its trains at its regular stations, and its duty in stopping at the usual places of getting on and off, and giving passengers when stopped, reasonable time to get off before starting the train, and of the right of the passenger, when the station was called and the train stopped, to presume it was at the usual and proper place to get off, and that it was safe to do so, and of the facilities required to be afforded passengers for leaving the

train. He had also properly instructed them that a passenger injured by getting off a moving train when the defendant was in no fault, could not recover. And he proceeded to instruct them that a passenger, in getting off a train, was required to exercise his senses for his own preservation. He also charged them in relation to mutual or contributory negligence, that if both parties were guilty of some negligence, if the negligence of the plaintiff was the proximate and efficient cause of the injury, she could not recover, but if the defendant's negligence was the proximate and efficient cause of the injury, it would be liable; but in such case the negligence of the plaintiff should be taken into consideration by them in mitigation of damages. This has been the established law in Tennessee since the case of *Whirley* v. *Whiteman,* 1 Head, 600.

We think the charge, when all taken together, although not framed with strict legal accuracy, does not contain any positive error for which the cause ought to be reversed, especially as we think we can see the defendant has sustained no injury by it.

In the earlier cases it was held that jumping or alighting from a train while in motion, unless impelled by immediate danger, was negligence on part of a passenger, and in jurisdiction where contributory negligence defeated the action, a plaintiff who did so and was injured, was not permitted to recover. But in courts where this principle still prevails, the rule has been modified: Thompson on Passengers, 227, and authorities cited. And doing so under certain circumstances, has been held not to be even contributory negligence. In

this State, where the rule above cited, in relation to mutual negligence prevails, there is no room for its application.

The jury, we think, were warranted, from the proof, in the conclusion—and there was certainly evidence upon which it could rest—that the train was stopped in a rough and dangerous place to alight from it; that the station was called by the conductor and the plaintiff told by him to get off; that he opened the door to let her out, and left her on the platform of the car in the dark, when the train was beginning to move off, without affording her either light or assistance, and without warning her of the danger or requesting her to desist, when he saw the car was in motion after he had directed her to get off; and that the train was not stopped a sufficient length of time to allow her to get off before starting; that she was excited by the situation in which she was placed, and in the darkness and confusion, seeing the train was moving off, jumped from it upon the impulse of the moment. It being so dark that she could not see, and the station having been announced, the train stopped and she told by the conductor to get off, she had a right to presume that she was at the usual place of getting off, and that there was at that place a safe and suitable place for her to alight from the train: *Cartright* v. *Chicago & Grand Trunk Railway Company*, 52 Mich., 606, published in American Reports, vol. 50, page 274, and notes and authorities cited; Rorer on Railroads, 1117. She had also a right to rely upon the directions of the conductor, and

Railroad Company *v.* Conner and Wife.

to presume it was safe to alight from the train in accordance with his directions: Rorer on Railroads, 1092.

With a safe and proper place to alight, and the train moving at the speed a man would walk at a brisk gait, the probabilities are strong that she would not have been injured, and we are satisfied that the jury were warranted in the conclusion that it was the first and more gross negligence of the defendant that was the proximate and efficient cause of the injury. It is evident they predicated their verdict upon this conclusion, and that they considered the plaintiff was also guilty of negligence, which they weighed against her in assessing her damages, as they only found a verdict for five hundred dollars, although her injuries are shown to be serious and permanent.

The special charges requested by the defendant, under the facts of the case, should not have been given, and were properly refused.

It is also urged that the court erred in charging the jury upon the subject of vindictive damages, as there was no testimony to justify a charge upon this subject. Whether or not this is so is unnecessary to consider, as it is perfectly certain that such damages formed no part of their verdict. It is unnecessary to notice the other objections to the charge further than to say, that we do not consider any of them tenable.

We are satisfied with the result of the case and affirm the judgment.