MARY A. BIGELOW *vs.* WEST END STREET RAILWAY COMPANY.

Suffolk.    March 12, 1894. — May 18, 1894.

Present: FIELD, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Negligence — Due Care — Alighting from Street Car.*

The plaintiff, who was a passenger on an open electric car, desiring to leave it, motioned for that purpose to the conductor, who gave a signal to the motorman, and the car was slowed up gradually until it stopped at a regular stopping place with the rear platform several feet beyond the crossing of an intersecting street, as required by a regulation of the board of aldermen, and opposite a place in the street upon which it was travelling where the street pavement had been removed, and the foundation of a new road-bed consisting of rubble and cement covered with sand had been laid, but where, the paving blocks not having then been laid, there remained an excavation about six inches in depth. When the car stopped the plaintiff arose from his seat on the right-hand side of the car, took hold of the handle of the seat with his right hand, put his right foot on the running board and his left foot toward the ground, and, glancing around for approaching carriages, but not looking to see where he was stepping, stepped off into the unpaved part of the street and fell on his left side. The accident occurred in the middle of the forenoon, and there was nothing to prevent him from seeing the excavation if he had looked down, or to prevent him from alighting on the other side of the car where the pavement was in place. *Held*, that there was no evidence of negligence on the part of the defendant.

LATHROP, J.   This is an action for personal injuries sustained by the plaintiff while leaving an open electric car of the defendant on Charles Street in Boston, near Chestnut Street, between nine and ten o'clock in the morning of July 14, 1892.   Charles Street runs north and south, and is crossed at right angles by

Mount Vernon Street, Chestnut Street, and Beacon Street the first street named being north of Chestnut Street, and the last south of it. The car was going in a southerly direction. The seats in the car ran across it, and the plaintiff, before she attempted to leave the car, sat on the westerly side of the car, about the third seat from the front. The street pavement had been removed by the city of Boston on the westerly side of the track all of the way from Mount Vernon Street to Beacon Street, with the exception of the crossing at Chestnut Street, and in front of the door of a stable near Beacon Street. The new road-bed had been partially completed, that is, the foundation of it, consisting of rubble and cement with sand on top, had been laid, but the paving blocks, which are about six inches in depth, had not been laid. There were two car tracks on Charles Street, and the pavement between the westerly rail and the easterly side of the street was in place.

On getting near to Chestnut Street, which was a regular stopping place, the plaintiff motioned to the conductor to stop the car. He gave a signal accordingly to the motorman, and the car was slowed up gradually, and was stopped with its rear platform some feet over the crossing of Chestnut Street and opposite the excavation. The plaintiff testified that she had a parcel of sulky seats which she put under her left arm, took her lunch bag in her left hand, and with her right hand took hold of the handle of the seat on which she had been sitting, glanced round to see if there were any carriages coming, and stepped off, but did not look to see where she was stepping; that there was nothing to prevent her seeing the excavation if she had looked; and that she put her right foot on to the running board, and her left foot toward the ground, and fell on her left side. She also testified that she did not know that the excavation was there; and that she knew that the car could not stop on an intersecting street. A regulation of the board of aldermen of the city of Boston was put in evidence, which provides as follows: " No person having the control of the speed of a street railway car shall stop any such car on a cross-walk or in front of an intersecting street except to avoid collisions or to prevent danger to persons in the street."

At the close of the evidence, the presiding justice directed a verdict for the defendant; and the case comes before us on the

plaintiff's exceptions to this direction, and to the exclusion of two questions put to the plaintiff by her counsel, which related to her knowledge of the place of the accident on previous occasions.

These questions are material only upon the point whether the plaintiff was in the exercise of due care.   But it is unnecessary to consider them, or to determine whether there was sufficient evidence to warrant a jury in finding that she was in the exercise of due care, as we are of opinion that the exceptions show no evidence of negligence on the part of the defendant.

A passenger on a street car has no right to expect that the street between the track and the sidewalk shall be in such a condition that he can safely pass over it.   When he leaves the car he ceases to be a passenger, and becomes merely a traveller upon the highway.   *Creamer* v. *West End Street Railway*, 156 Mass. 320.

The plaintiff, however, contends that, as there was evidence that the conductor and motorman knew the condition that the street was in, they ought not to have stopped the car where they did, or should have cautioned the plaintiff not to get off on the westerly side, or have stopped on Chestnut Street.   It is a sufficient answer to the last contention, that the exceptions do not show that there was time to stop the car on Chestnut Street after the plaintiff signified her desire to leave.   So far as appears, the signal to stop was given at once, and the car slowed up in the usual manner.

As to the other contentions, we are of opinion that those in charge of the car had the right to assume that the plaintiff understood the situation.   She sat on the side of the car next to the excavation, and had it in sight for some distance in going between Mount Vernon Street and Chestnut Street.   It was in the forenoon, and everything was plainly visible.   The difference between the then level of the street and its former level was not so great as to render it especially hazardous for a passenger to leave the car there, or to make it necessary for those in charge of the car to refuse to stop the car or to caution a passenger as to alighting.   While we do not say that the plaintiff was negligent, as matter of law, in not looking to see where she was stepping, it is plain that a jury would be warranted in so finding; and it seems to us, in considering the question of the negligence

of the defendant's servants, that they had a right to assume that the plaintiff would look and take heed unto her steps.

The case differs widely from that of *Richmond City Railway* v. *Scott*, 86 Va. 902. In that case a closed street car stopped, in the night-time, with its rear platform on the side of a trench, twelve or fourteen feet in length, fifteen feet deep, and three feet wide. A passenger stepped from the platform into the trench, and the railway company was held liable, on the ground that the car ought not to have stopped there, or the plaintiff should have been warned, and directed to leave the car by the other side.                    *Exceptions overruled.*

*F. S. Hesseltine,* for the plaintiff.

*M. F. Dickinson, Jr.,* for the defendant.